

# Missouri Court of Appeals
## Southern District

### In Division

| | |
|---|---|
| In the Interest of:<br>J.R.S. and L.X.S., | )<br>)<br>) |
| GREENE COUNTY JUVENILE OFFICE, | )<br>) No. SD37768 and SD37769 |
| Respondent, | ) Consolidated<br>) |
| vs. | ) FILED: May 3, 2023<br>) |
| H.A.S., SR., | )<br>) |
| Appellant. | ) |

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Calvin R. Holden, Judge

**AFFIRMED**

H.A.S., Sr. ("Father") appeals from the circuit court's judgments terminating his parental rights to J.R.S. ("Daughter") and L.X.S. ("Son").[1] The circuit court terminated Father's parental rights as to Daughter upon the statutory grounds of neglect and failure to rectify the conditions that caused the trial court to assume jurisdiction, *see* section 211.447.5(2)-(3),[2] and as to Son upon Father's written consent, *see* section 211.444. Father contends, in points 1 and 2, that the

---

[1] A judgment terminating Father's parental rights was filed in each case resulting in two appeals. By written order, this court consolidated those appeals for all purposes. The parental rights of the children's mother are not at issue in this appeal.

[2] All statutory references are to RSMo Cum.Supp. 2021.

neglect and failure-to-rectify findings were against the weight of the evidence and, in point 3, that the consent finding was not supported by substantial evidence.[3] We affirm.

**Standard of Review**

"The trial court's judgment is presumed valid and the burden is on the appellant to demonstrate its incorrectness." ***Bowles v. All Counties Inv. Corp.***, 46 S.W.3d 636, 638 (Mo.App. 2001) (internal quotation marks omitted). "This Court will affirm the trial court's decision to terminate parental rights unless the 'record contains no substantial evidence to support the decision, the decision is against the weight of the evidence, or the trial court erroneously declares or applies the law.'" ***In re S.M.H.***, 160 S.W.3d 355, 362 (Mo. banc 2005) (quoting ***Murphy v. Carron***, 536 S.W.2d 30, 32 (Mo. banc 1976)). This amounts to a reversal only if we are left with the firm belief that the order terminating parental rights was wrong. ***Id.***

**Discussion**[4]

*Point 3*

In his third point, Father claims the circuit court erred in concluding he voluntarily, knowingly, and freely consented in writing to the termination of his parental rights as to Son under section 211.444. That statute allows the circuit court to terminate the rights of a parent to a child if, as relevant here, the parent properly executes written consent to the termination of his or her parental rights. Section 211.444.

The circuit court made the following findings of fact in its judgment terminating Father's parental rights to Son:

> On April 25, 2022, [the date of trial,] [Father] appeared before a Notary Public for the State of Missouri, and under oath, executed his General Consent to Termination of Parental Rights and Adoption in, to, and over [Son]. The Court reviewed, approved, and accepted this document. Based upon this document and

---

[3] Father does not challenge the trial court's best interest determinations.
[4] For ease of analysis, we review Father's three points out of order.

the representations made by [Father]'s attorney . . . , the Court finds that [Father] has voluntarily, knowingly, and freely consented in writing to the termination of his parental rights pursuant to Section 211.444 RSMo.

Consistent with these findings, the trial transcript reflects that the following exchange occurred on the record:

> THE COURT: [Father's attorney], you have an announcement on the consent on [Son]; is that correct?
>
> [FATHER'S ATTORNEY]: Yes, Your Honor. As I mentioned earlier on the record, he and I had a pretty long conversation about this. This is obviously a very difficult decision for him. He does believe that it is in [Son]'s best interest that he sign a voluntary consent to termination of parental rights. It's important for him to let the Court know that this isn't him really choosing one child over the other but an attempt to understand [Son]'s situation and how he feels and how far they are from being able to reconcile that relationship. I think there is some movement that direction, but at this time in light of that, he does believe that it's in [Son]'s best interest to sign this voluntary termination of parental rights. It has been executed. It has been notarized while we were off the record. He is of sound mind. We've had a rather long conversation about this on more than one occasion, and so I believe he's had time to consider it. I don't believe he's under the influence of any drugs, alcohol or mental health issues that would prevent him from doing this in a logical fashion. I believe he understands what he's doing. In light of all that, Judge, we'd ask the Court to accept his general consent, and I'd ask to approach, if I could?
>
> THE COURT: You may.
>
> [Father], you sat in the courtroom and you've heard your attorney. Is everything that he said correct, that this is what you want to do?
>
> NATURAL FATHER: Yes.
>
> THE COURT: Okay. I'll find that [Father] has done a good thing for his son, a hard thing for him. But I'll find that it is a knowing and voluntary consent on [Son] and accept the consent here today. I assume the [guardian ad litem ("the GAL")] is in agreement with the consent for termination?
>
> [THE GAL]: Yes, Your Honor. I am.
>
> THE COURT: Okay. Court will accept it.

Father acknowledges the aforementioned exchange and the executed written consent form. According to Father, however, these "were only unsworn statements made by Father's

trial attorney, unsworn statements made by Father, and a consent form which was never offered for admission into evidence and never admitted into evidence by the trial court, although the consent form was filed with the trial court." For these reasons, Father asserts "[t]here was no properly admitted evidence pertaining to Father's consent to terminate his parental rights, and therefore there was not substantial evidence to support the trial court's findings and conclusion that Father's written consent was signed by Father voluntarily, knowingly and freely."[5]

"It is well settled that this Court will not permit a party to: (1) take a position on a matter that is directly contrary to, or inconsistent with, one previously assumed; or (2) complain on appeal about an alleged error in which he joined, acquiesced or invited by his conduct at trial." *In Interest of A.R.T.*, 496 S.W.3d 610, 615 (Mo.App. 2016).

Here, Father previously presented and asked the circuit court to "accept his general consent[.]" As such, Father cannot now claim that such acceptance, as he requested, was error. Accordingly, Father's third point is denied.

### Points 1 and 2

In his first point, Father claims the termination of his parental rights as to Daughter under the section 211.447.5(2) statutory ground of neglect was against the weight of the evidence. Father does not, however, present a cogent and cognizable against-the-weight-of-the-evidence challenge and, as such, fails in his burden to demonstrate circuit court error.

Section 211.447.6 requires that, in order to terminate an individual's parental rights, a trial court must first determine that at least one statutory ground—outlined in subsections 2, 4, and 5 of section 211.447—in support of termination is proven by clear, cogent, and convincing

---

[5] To be clear, Father does not claim that the execution of the written consent form was the result of duress, undue influence, fraud, or was otherwise involuntary. Father's claim concerns and challenges only the circuit court's consideration of the written consent form and any statement by himself or his counsel.

evidence. Evidence is clear, cogent, and convincing when it "instantly tilts the scales in favor of termination when weighed against the evidence in opposition and the finder of fact is left with the abiding conviction that the evidence is true." *In re K.A.W.*, 133 S.W.3d 1, 12 (Mo. banc 2004).

With regard to the particular challenge Father raises—that the circuit court's judgment was against the weight of the evidence—our supreme court has issued the following guidance:

> Appellate courts act with caution in exercising the power to set aside a decree or judgment on the ground that it is against the weight of the evidence. A claim that the judgment is against the weight of the evidence presupposes that there is sufficient evidence to support the judgment. The against-the-weight-of-the-evidence standard serves only as a check on a circuit court's potential abuse of power in weighing the evidence, and an appellate court will reverse only in rare cases, when it has a firm belief that the decree or judgment is wrong. When reviewing the record in an against-the-weight-of-the-evidence challenge, this Court defers to the circuit court's findings of fact when the factual issues are contested and when the facts as found by the circuit court depend on credibility determinations. A circuit court's judgment is against the weight of the evidence only if the circuit court could not have reasonably found, from the record at trial, the existence of a fact that is necessary to sustain the judgment. When the evidence poses two reasonable but different inferences, this Court is obligated to defer to the trial court's assessment of the evidence. This Court rarely has reversed a trial judgment as against the weight of the evidence.

*S.S.S. v. C.V.S.*, 529 S.W.3d 811, 815-16 (Mo. banc 2017) (internal quotation marks and citations omitted).

"The trial court receives deference on factual issues because it is in a better position not only to judge the credibility of the witnesses and the persons directly, but also their sincerity and character and other trial intangibles which may not be completely revealed by the record." *J.A.R. v. D.G.R.*, 426 S.W.3d 624, 627 (Mo. banc 2014) (internal quotation marks omitted). "In reviewing questions of fact, the reviewing court is to recognize that the circuit court is free to disbelieve any, all, or none of the evidence, and it is not the reviewing appellate court's role to re-evaluate the evidence through its own perspective." *Id.* "It is only when the evidence is

5

*uncontested* that no deference is given to the trial court's findings." ***White v. Director of Revenue***, 321 S.W.3d 298, 308 (Mo. banc 2010).

Although the issue of whether Father neglected Daughter was contested,[6] Father tacitly suggests that all of the evidence offered at trial that was contrary to the circuit court's neglect findings was *uncontested*. The only evidence Father identifies is the testimony elicited from the witnesses that were called as part of the Greene County Juvenile Office's ("the Juvenile Office") case-in-chief. Father characterizes some of this testimony as supportive of and some as contrary to the neglect statutory ground for termination.[7] Father asserts that such "contrary" witness testimony "should have been credited by the [circuit] court" because "the efficacy of their testimony was not based on a credibility determination in that there was no contradicting witness testimony or dispute regarding these specific facts, and no one argued that they were not credible witnesses."

Father's argument fails in that it misunderstands the circumstances in which evidence can be deemed uncontested. "Evidence is uncontested in a court-tried civil case when the issue before the trial court involves only stipulated facts and does not involve resolution by the trial court of contested testimony . . . ." ***White***, 321 S.W.3d at 308. Evidence also is uncontested when a party admits in its pleadings, by counsel, or through the party's individual testimony, the basic facts of the other party's case. ***Id.***

None of the aforementioned situations or principles apply to the instant case. "To contest evidence, a party need not present contradictory or contrary evidence. While a party can contest

---

[6] At the beginning of trial and during the announcement that Father wished to consent to terminate his parental rights to Son, Father's attorney indicated that, after executing the necessary paperwork, "we can just proceed with the evidence as intended to *contest* the termination on [Daughter]." (Emphasis added.)

[7] Father did not offer any witness or documentary evidence at trial. In addition to certain testimony by the Juvenile Office's witnesses, Father also identifies "the A&M Recovery Records" as being contrary to the circuit court's judgment. However, Father's reference to "the A&M Recovery Records" is supported only by transcript citations to witness testimony.

evidence by putting forth evidence to the contrary, a party also can contest evidence by cross-examination, or by pointing out internal inconsistencies in the evidence." *Id.* (citations omitted).

Here, at a minimum, Father cross-examined all of the Juvenile Office's witnesses. It was during such cross-examination that Father challenged the Juvenile Office's proffered evidence by eliciting much of the purportedly "contrary" testimony upon which his argument relies. The circuit court, however, was free to believe *none* of this testimony. *See **J.A.R.***, 426 S.W.3d at 627; *see also **Interest of D.N.D.***, 646 S.W.3d 748, 752 (Mo.App. 2022) ("Because the circuit court was free to believe *none* of [the witness] testimony and we defer to its credibility determinations, none of that referenced testimony is relevant to or may be considered in analyzing and evaluating Mother's against-the-weight-of-the-evidence challenge.").

"A cogent and cognizable against-the-weight-of-the-evidence argument requires, among other steps, that the appellant identify the evidence in the record contrary to the belief of the challenged factual proposition, *resolving all conflicts in testimony in accordance with the trial court's credibility determinations, whether explicit or implicit*." ***D.N.D.***, 646 S.W.3d at 753 (internal quotation marks omitted); *see also **Houston v. Crider***, 317 S.W.3d 178, 187 (Mo. App. 2010) (setting out the analytical framework for an against-the-weight-of-the-evidence challenge). "[T]he consideration of evidence contrary to the judgment differentiates an against-the-weight-of-the-evidence challenge from a not-supported-by-substantial-evidence challenge, which only considers the evidence favorable to the judgment." ***D.N.D.***, 646 S.W.3d at 753.

> Because these are the only two recognized methods to challenge on appeal a factual proposition the existence of which is necessary to sustain the judgment, and the former presupposes the latter, the failure to identify any evidence contrary to the judgment that may be considered by the appellate court in analyzing and evaluating an against-the-weight-of-the-evidence challenge necessarily dooms the challenge.

*Id.* (internal citations omitted).

Father's omission of contrary evidence in accordance with the aforementioned principles renders his argument analytically useless and necessarily unpersuasive in establishing his claimed circuit court error.[8]  As such, Father failed his burden to establish that the circuit court's presumed-correct neglect determination is against the weight of the evidence.  Father's first point, therefore, is denied.

Proof of any one statutory ground under section 211.447.5 is sufficient to sustain a judgment terminating parental rights.  *In re P.L.O.*, 131 S.W.3d 782, 789 (Mo. banc 2004).  Thus, in light of our disposition of Father's first point, any analysis of his second point—challenging the trial court's findings as to the failure-to-rectify ground for terminating Father's parental rights as to Daughter—is moot and need not be addressed.

### Decision

The trial court's judgment is affirmed.

BECKY J. W. BORTHWICK, J. – OPINION AUTHOR

JEFFREY W. BATES, J. – CONCURS

MARY W. SHEFFIELD, J. – CONCURS

---

[8] As was also the case in *D.N.D.*, 646 S.W.3d at 453 n.5, "[t]his omission obviates the need to recite any additional or extended factual background in order to resolve [Father]'s point relied on."