GLENSTONE BLOCK COMPANY, d/b/a Glen Block Hardware & Building Supplies, a Missouri Corporation, Respondent,

v.

Vincent K. PEBWORTH, d/b/a VIP Property Improvements, Defendant,

and

Parkview Bay Development, Inc., Union Planters Bank, and Jefferson Financial, Inc., et al., Appellants.

No. SD 28734.

Missouri Court of Appeals, Southern District, Division One.

Oct. 1, 2008.

James D. Sickal, Curran & Sickal, Osage Beach, for appellants.

Sherrie N. Hamner and Ronald K. Carpenter, Phillips, McElyea, Carpenter & Welch, P.C., Camdenton, for respondent.

ROBERT S. BARNEY, Judge.

Defendants Parkview Bay Development, Inc. ("Parkview"), Union Planters Bank ("Union Planters"), and Jefferson Financial, Inc. ("Jefferson Financial") (collectively "Appellants") appeal the trial court's judgment in favor of Glenstone Block Company, d/b/a Glen Block Hardware & Building Supplies ("Respondent").[1] The trial court adjudged that Mr. Pebworth was liable to Respondent in the net amount of $18,629.32 together with certain prejudgment interest and imposed a special lien upon Parkview's property. Further, the trial court's judgment established that the deed of trust filed by Union Planters and Jefferson Financial was, in fact, a construction loan such that the trial court determined the deed of trust was inferior

---

1. Defendant Vincent K. Pebworth d/b/a VIP Property Improvements ("Mr. Pebworth") was also involved in the underlying action, but does not appear in this appeal.

to Respondent's mechanic's lien. Appellants assert five points of trial court error.

Viewing the evidence in the light most favorable to the trial court's judgment, *Bush Constr. Machinery, Inc. v. Kansas City Factory Outlets, L.L.C.*, 81 S.W.3d 121, 122 (Mo.App.2002), the record reveals that in May or June of 2001, Mr. Pebworth, a general contractor, "contracted with [Respondent] to provide materials for the construction of a block wall for [Parkview]" at the Parkview Bay North Condominium Subdivision ("the Condominium Complex"). Bruce Barton ("Mr. Barton"), an employee of Respondent, testified that he and Mr. Pebworth verbally agreed at that time that Respondent would "manufacture and supply" the block for his project at the Condominium Complex. Mr. Barton testified that it was estimated that Mr. Pebworth would need a very large amount of "Rockwood classic" blocks for the project and Mr. Pebworth made an advance payment in the amount of $12,009.20.[2] Mr. Barton testified that Respondent had already made "two or three deliveries of block" to the Condominium Complex prior to the advance payment being made and that, thereafter, Mr. Pebworth returned some of the block such that by August 21, 2001, the initial payment was "totally used up" and the parties were "even on the amount of money [Mr. Pebworth] paid [Respondent] and what [Respondent had] delivered."[3] At some point in time thereafter, Mr. Pebworth set up a charge account with Respondent and charged items supplied to the Condominium Complex project as well as other projects to that account. Respondent last supplied block to the Condominium Complex at Mr. Pebworth's request on October 2, 2001, and as of that date Respondent contended that Mr. Pebworth owed Respondent $21,072.77 for block supplied for the Condominium Complex project.

On November 26, 2001, Respondent gave written notice of its intention to file a mechanic's lien per section 429.100[4] to Parkview's registered agent. Thereafter, on December 19, 2001, Respondent filed its "Statement of Mechanic's Lien" per section 429.080. This Statement of Mechanic's Lien contained thirty-three pages of invoices relating to Mr. Pebworth's account with Respondent and listed the owners of the subject property as Parkview and individual condominium unit owners who owned condominiums in the Condominium Complex at the time the project began in June of 2001.

---

2. A "Waiver of Lien" was signed by Mr. Pebworth and Mr. Barton on June 14, 2001, as it related to the advance payment.

3. As best we discern, Mr. Pebworth returned 796 blocks to Respondent and Mr. Pebworth's account was due a credit of $2,389.83.

4. Section 429.100 sets out that

 [e]very person except the original contractor, who may wish to avail himself of the benefit of the provisions of sections 429.010 to 429.340, shall give ten days' notice before the filing of the lien, as herein required, to the owner, owners or agent, or either of them, that he holds a claim against such building or improvement, setting forth the amount and from whom the same is due.

Section 429.010 controls who may assert a mechanic's lien:

 [a]ny person who shall do or perform any work or labor upon, or furnish any material, fixtures ... for any building, erection or improvements upon land ... or by virtue of any contract with the owner or proprietor thereof, or his agent, trustee, contractor or subcontractor ... upon complying with the provisions of sections 429.010 to 429.340, shall have for his work or labor done, or materials, fixtures ... a lien upon such building, erection or improvements, and upon the land belonging to such owner or proprietor on which the same are situated....

Unless otherwise stated, all statutory references are to RSMo 2000 and all rule references are to Missouri Rules of Court (2007).

On February 1, 2002, Respondent filed an "Amended Statement of Mechanic's Lien," which apparently corrected the legal description for the Condominium Complex listed in the original Statement of Mechanic's Lien, but otherwise contained the same exhibits and assertions of fact.

On April 22, 2002, Respondent filed its "Petition for Enforcement of Mechanic's Lien" ("petition for mechanic's lien") against Mr. Pebworth, Union Planters, Jefferson Financial, Parkview, and, in addition, various individual condominium unit owners. On December 13, 2002, Appellants filed a "Motion for Summary Judgment Against Plaintiff" ("motion for summary judgment") and an "Alternative Motion for Summary Judgment" ("alternative motion for summary judgment"). The motion for summary judgment was withdrawn by Appellants on April 15, 2003. On April 18, 2003, Respondent then voluntarily dismissed its petition for mechanic's lien as it related to the individual condominium unit owners and, by leave of court, filed its "Amended Petition for Enforcement of Mechanic's Lien" ("amended petition for mechanic's lien"). On July 15, 2003, Appellants' alternative motion for summary judgment was overruled by the trial court.

A trial was held on June 24, 2004. The trial court found in its "Findings of Fact & Conclusions of Law" that "all of the materials described on Exhibit A ..." were used by Mr. Pebworth to construct a wall at the Condominium Complex; that the prices charged by Respondent were "fair and reasonable;" that the invoices presented were correct "except for ... the invoice labeled as page 31 ... in the amount of $32.17" and the "invoice on page 36 ... in the amount of $21.45;" that the inclusion of pages 36 and 31 into Exhibit A "was an inconsequential and inadvertent error and does not defeat [Respondent's] mechanic's lien;" that after deducting the invoices on pages 31 and 36 from the amount of $21,072.77, which was the amount stated in the amended petition for mechanic's lien, the amount owed to Respondent was $21,019.15; that Mr. Pebworth returned "a certain amount of blocks to Respondent such that he should receive a credit of $2,389.83 from Respondent on the account;" and, accordingly, the amount owed to Respondent by Mr. Pebworth was $18,629.32.

The trial court further found that timely notice of the filing of the mechanic's lien was given to Parkview and that Respondent met all of the statutory requirements relating to the filing of the mechanic's lien. Additionally, the trial court found that pursuant to section 431.180.2 Respondent was "entitled to be awarded interest on the unpaid balance ... from the date the payment was due...." The trial court also concluded that a deed of trust between Parkview, Union Planters, and Jefferson Financial "is a construction loan deed of trust and is, therefore, inferior to [Respondent's] mechanic's lien."

As a result of the foregoing findings of fact and conclusions of law, the trial court adjudged that Mr. Pebworth owed Respondent the net amount of $18,629.32 "with interest at three quarters of one percent ... per month from and after October 2, 2001, for costs of this action and to have execution therefore on the property of [the Condominium Complex owned by Parkview]," and that Respondent's mechanic's lien "is a special lien and is prior, superior and senior to the interests of [Union Planters and Jefferson Financial]." This appeal by Parkview, Union Planters, and Jefferson Financial followed.

■ Appellants' first point relied on asserts the trial court erred in denying their "alternative motion for summary judgment and/or entering judgment in favor of Appellant[s]" because Respondent failed to

join all of the individuals who are individual condominium unit owners to the lawsuit and also failed to provide the individual owners with the proper statutory notice.

■ As a general rule, "'[a] trial court order denying a party's motion for summary judgment is not reviewable, even when the appeal is taken from the final judgment in the case.'" *In re Care and Treatment of Johnson*, 161 S.W.3d 873, 880 (Mo.App.2005) (quoting *Reis v. Peabody Coal Co.*, 935 S.W.2d 625, 632 (Mo. App.1996)). Allegations related to the denial of a motion for summary judgment by a losing party will only be reviewed "when its merits are completely intertwined with a grant of summary judgment in favor of an opposing party." *Transatlantic Ltd. v. Salva*, 71 S.W.3d 670, 675–76 (Mo.App. 2002). That is not the situation in the present case. Nevertheless, in the interest of clarity, we will analyze Appellants' first point. We will view the evidence in the light most favorable to the trial court's judgment. *Bush Constr. Machinery, Inc.*, 81 S.W.3d at 122.

We initially observe that Appellants' first point relied on takes issue with the trial court's entry of judgment in favor of Respondent because Appellants apparently contend that all of the individual condominium unit owners were "required to be joined in the lawsuit and served with the statutory 10 day notice ..." and Respondent "failed ... to give notice ... and then later voluntarily dismiss[ed] as to individual [condominium] unit owners...."

We note that Appellants' motion for summary judgment, which was brought together with the individual condominium unit owners as "Special Defendants," expressly set out that "the real estate on which the improvement (retaining wall) is located is owned solely by [Parkview] ...

and not by the individual [condominium] unit owners...."[5] On the same date, Appellants and the individual condominium unit owners also filed an alternative motion for summary judgment in which they stated that "in the event [the motion for summary judgment] is overruled and/or it is found that the individual unit condominium owners['] property is subject to [Respondent's] mechanic's lien, then in this event these Separate Defendants move the Court to enter Summary Judgment against [Respondent]...." Again, it is from the trial court's denial of this latter, alternative motion for summary judgment that Appellants now seek to appeal.

The record shows that on April 18, 2003, Respondent voluntarily dismissed its original petition for mechanic's lien as it related to the individual condominium unit owners only and, by leave of court, filed its amended petition for mechanic's lien solely as to the remaining Appellants. Subsequently, the trial court overruled Appellants' alternative motion for summary judgment and entered its judgment imposing a special lien on Parkview's property.

Having reviewed the judgment, it is clear that the judgment made no determination that the retaining wall in question was owned by the individual condominium unit owners, as set out in the alternative motion for summary judgment. Neither did the judgment impose a mechanic's lien on the units of these individual condominium owners.

We also observe that in their alternative motion for summary judgment Appellants do not deny what they had expressly asserted in their motion for summary judgment, by way of statements and supporting affidavits, that "[t]he real estate on which the improvement (retaining wall) is

---

**5.** Here, the trial court took judicial notice of "its entire file" at Appellants' request. Under these circumstances the court file was properly considered by the trial court. *Chandler v. Hemeyer*, 49 S.W.3d 786, 792 (Mo.App.2001).

located is owned solely by [Parkview] ... and not by the individual [condominium] unit owners...." They merely pled the contingency that *if* the individual condominium owners' units would become subject to Respondent's mechanic's lien, *"then in this event* these Separate Defendants move the Court to enter Summary Judgment against [Respondent]" based on the fact that "they were not given the requisite and mandatory ten (10) day notice as required by [s]ection 429.100." (Emphasis added).

It is clear, however, that the individual condominium units have not been burdened by any mechanic's lien imposed by this judgment. The contingency Appellants pled in their alternative motion for summary judgment has never taken place. Furthermore, Appellants cannot now take the inconsistent and contrary position before this Court that the individual condominium unit owners did in fact have a legal interest in this action such that they should have received notice of the mechanic's lien. "The doctrine of *quasi* estoppel prevents a party from taking a position directly contrary to or inconsistent with another position previously taken." *Sheppard v. East*, 192 S.W.3d 518, 524 (Mo. App.2006); *see Porter v. Erickson Transport Corp.*, 851 S.W.2d 725, 736 (Mo.App. 1993). Additionally, these individual condominium unit owners were not parties to the action tried to the trial court, thus they were not affected by the mechanic's lien issued solely against the Parkview property. *See Doss v. Howell–Oregon Elec. Co-op., Inc.*, 158 S.W.3d 778, 783 (Mo.App. 2005) (holding that "Missouri courts have consistently held that no judgment can be granted against someone who is not a party to the case"). Appellants' argument has no merit. Point I is denied.

Appellants' second point relied on maintains the trial court erred in entering judgment in favor of Respondent for $18,629.32

and making said judgment a special lien, because such a judgment is not supported by substantial evidence, is against the weight of the evidence, and is the result of an erroneous application of the law. Appellants assert the judgment was in error in that Respondent "failed to sustain [its] burden of proof as to each element of [its] cause of action...." Specifically Appellants argue Respondent failed to establish its

viability as a Missouri Corporation in good standing, that the blocks were actually delivered to [the] jobsite, that said materials were actually incorporated into the wall, that Respondent[ ] gave the required ten ... day amended notice of [its] amended mechanic's lien dated February 1, 2002, to Appellant[s], and that Respondent has further failed to prove [Parkview] is the 'owner' of the property on which the improvements were made.

In court tried cases this Court will sustain the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence or unless it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "'When determining the sufficiency of the evidence, an appellate court will accept as true the evidence and inferences from the evidence that are favorable to the trial court's judgment and disregard all contrary evidence.'" *Bush Constr. Machinery*, 81 S.W.3d at 122 (quoting *Propes v. Griffith*, 25 S.W.3d 544, 547 (Mo.App. 2000)). "This court gives considerable deference to the evidentiary and factual evaluations by the trial court; however, no such deference is given where the law has been erroneously applied." *Bush Constr. Machinery*, 81 S.W.3d at 122.

"[S]tatutes creating mechanic's liens are remedial in nature and should be

given a liberal construction so as to effectuate their object and purpose and protect the claims of the mechanics and materialmen. The mechanic's lien law is to be construed as favorably to the materialman as its terms permit." *Landvatter Ready Mix, Inc. v. Buckey,* 963 S.W.2d 298, 302–03 (Mo.App.1997). In mechanic's lien cases, "the party claiming a statutory lien bears the burden of proving compliance with essential elements of the lien statute at issue." *Space Planners Architects, Inc. v. Frontier Town–Missouri, Inc.,* 107 S.W.3d 398, 403 (Mo.App.2003).

 We initially observe that Appellants complain Respondent failed to prove its "viability as a Missouri Corporation in good standing . . .;" "failed to prove [Parkview] is the 'owner' of the property on which the improvements were made . . .;" and did not prove it "gave the required ten . . . day amended notice of [its] amended mechanic's lien dated February 1, 2002, to Appellant[s]. . . ." However, these issues, while they are set out in Appellants' point relied on, are not mentioned or addressed in the argument portion of their brief. " 'Arguments raised in the points relied on which are not supported by argument in the argument portion of the brief are deemed abandoned and preserve nothing for appellate review.' " *Coleman v. Gilyard,* 969 S.W.2d 271, 273 (Mo.App.1998) (quoting *Luft v. Schoenhoff,* 935 S.W.2d 685, 687 (Mo.App. 1996)). Accordingly, these issues are deemed abandoned and are not addressed in this opinion. We turn now to Appellants' allegations that there was insufficient evidence to prove "the blocks were actually delivered to [the] jobsite" and "were actually incorporated into the wall. . . ."

 Mr. Barton testified he had been to the Condominium Complex "during the construction and toward the end" of the project such that he saw Respon-dent's blocks on the property owned by Parkview. Mr. Barton further testified that he was aware that deliveries of block were being made to the Condominium Complex at the request of Mr. Pebworth as evidenced by invoices attached to the Amended Statement of Mechanic's Lien and introduced at trial. It has long been held that "testimony showing that materials were delivered, coupled with receipts of such materials . . ." are sufficient under the mechanic's lien statutes. *Boyer Lumber, Inc. v. Blair,* 510 S.W.2d 738, 745 (Mo.App.1974), *overruled on other grounds by R.L. Sweet Lumber Co. v. E.L. Lane, Inc.,* 513 S.W.2d 365 (Mo. banc 1974). " 'It is impossible, in cases of this kind, to prove that [someone] saw every stick . . . put into the [structure]. If such rigid proof was required, few liens could be enforced.' " *Id.* at 746 n. 8 (quoting *E.R. Darlington Lumber Co. v. Harris,* 107 Mo. App. 148, 80 S.W. 688 (1904)). It is the province of the trial court to judge the credibility of witnesses such as Mr. Barton and to weigh the evidence accordingly. *See Bush Constr. Machinery,* 81 S.W.3d at 122. Having accorded the trial court deference in its evidentiary and factual evaluation, there was evidence Respondent furnished blocks to Mr. Pebworth's project at the Condominium Complex owned by Parkview. Accordingly, we are not firmly convinced the trial court erred in its determination. There was sufficient evidence to support the trial court's judgment. *See Dave Kolb Grading, Inc. v. Lieberman Corp.,* 837 S.W.2d 924, 932–33 (Mo.App. 1992). Point II is denied.

 In their third point relied on, Appellants assert the trial court erred in entering judgment in favor of Respondent on its mechanic's lien because the Amended Statement of Mechanic's Lien filed by Respondent on February 1, 2002, "did not contain a 'just and true account' of its

claim as required by section 429.080...." Appellants maintain Respondent's Amended Statement of Mechanic's Lien

> was a substantial variance from Respondent's account, said account contained numerous and substantial errors and mistakes, that Appellant[s] [were] not given all just and due credits on said account, that Respondent failed in its burden to prove that said mistakes and errors were the result of honest mistake.[6]

■■■■■ "Compliance with [s]ection 429.080 is a condition precedent to the right to maintain an action and enforce a lien on property." *American Prop. Maint. v. Monia*, 59 S.W.3d 640, 643 (Mo. App.2001). "In relevant part, that statute requires a lien claimant to file 'a just and true account' of the amounts due." *Id.* (quoting § 429.080). "There is no precise definition of this statutory requirement, and whether a lien statement is a just and true account depends upon the particular facts of the case." *Id.*

■■■■■ As previously related, "[i]n reviewing a decision concerning mechanic's liens, we are obligated to affirm the circuit court's judgment 'unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law.'" *Structure and Design, Unlimited, Inc. v. Contemporary Concepts Building and Design, Inc.*, 151 S.W.3d 904, 907 (Mo.App.2004) (quoting *Commercial Openings, Inc. v. Mathews*, 819 S.W.2d 347, 349 (Mo. banc 1991)). As previously related,

in our review of the judgment, we accept the evidence and inferences favorable to the judgment, while disregarding all contrary inferences. *Bush Constr. Machinery*, 81 S.W.3d at 122. If the trial court's factual findings are supported by substantial evidence in the record we are bound by those findings. *Id.*

■■■■■ "'A lien statement may be regarded as just and true, so as not to vitiate the entire lien, if the inclusion of a nonlienable item is the result of honest mistake or inadvertence without intent to defraud and if the nonlienable items can be separated from the lienable items.'" *Am. Prop. Maint. v. Monia*, 59 S.W.3d at 643 (quoting *Dave Kolb Grading*, 837 S.W.2d at 941). "It is a question of fact for the trial court whether or not to overlook mistakes in a lien statement and treat it as just and true." *Id.* at 644–45. "The lienor bears the burden of proving that mistakes or omissions were 'due to an honest mistake.'" *Structure and Design, Unlimited, Inc.*, 151 S.W.3d at 907 (quoting *City–Wide Asphalt Company, Inc. v. Industrial Paving, Inc.*, 838 S.W.2d 480, 482 (Mo.App. 1992)).

In the present matter, after hearing all of the evidence, the trial court found that with the exception of invoice page numbers 31 and 36, "all proper credits" were shown on Respondent's invoices utilized at trial and attached to Respondent's Amended Statement of Mechanic's Lien. Regarding the invoice at page number 31, the follow-

---

**6.** In this point relied on, Appellants take issue with the contents of Respondent's Amended Statement of Mechanic's Lien as well as with the contents of "Exhibit 7." We note Appellants have made reference throughout this appeal to the contents of "Exhibit 7," which was apparently composed of copies of the invoices relating to the Condominium Complex project. However, Appellants have failed to include a copy of this exhibit in the record on appeal. Rule 81.12(a) requires an appellant to file a record on appeal which "shall contain all of the record, proceedings and evidence necessary to the determination of all questions to be presented ... to the appellate court for decision." In that Appellants have failed to comply with this rule, we are hampered in our decision by this failure and cannot discuss any differences in "Exhibit 7" and the testimony offered at trial.

ing testimony was elicited at trial from Mr. Barton, Respondent's representative:

> Counsel for Respondent: Page 31 ... is Invoice 82019.
>
> Mr. Barton: That—That's an error. My lady that kept these records and and so on, that was a delivery of cottage stone which is a small retaining wall block out on Lake Road 5–57. That was included in this thing in error. That should not be included. $32.17 is the amount of that.

Further, invoice number 82019 in the amount of $32.17 was also attached to Respondent's Amended Statement of Mechanic's Lien, which was presented to the trial court as page number 31 of Respondent's "Exhibit A," and shows that "RW Cottage Stone–Brownstone Bevel" was the item purchased on that invoice instead of the "Rockwood classic" blocks used in the Condominium Complex project by Mr. Pebworth.

While this Court has not been provided a copy of invoice page number 36, Mr. Barton testified that invoice page 36 related to Mr. Pebworth's failure to return two pallets to Respondent. Mr. Barton explained that Respondent "normally charge[s] a deposit of $10 for each wood pallet delivered ... [and] if [it] didn't get those pallets returned, then [it] would charge for the numbers of pallets that were not returned." Mr. Barton explained that at the end of the job Respondent did not recover two pallets from Mr. Pebworth.

As previously related, where lienable items can be separated from non-lienable items improperly included in the lien statement and there is no intent to defraud, then those items mistakenly included may be separated out by the trial court. *Am. Prop. Maint.*, 59 S.W.3d at 644; *Dave Kolb Grading*, 837 S.W.2d at 941. Here, Mr. Barton testified that the invoice on page 31 was mistakenly included in the lien statement by his bookkeeper and the trial court subtracted it from the amount requested by Respondent. Likewise, Mr. Barton testified the invoice on page 36 was for two non-returned pallets, which the trial court found to be non-lienable items that it also removed from the total owed to Respondent. There is nothing in the record to suggest these items were included in the Amended Statement of Mechanic's Lien with the intent to defraud or that their inclusion was anything other than a mistake by Respondent. Again, we defer to the trial court on the issue of witness credibility. *Bush Constr. Machinery*, 81 S.W.3d at 122.

In our review, having accepted the evidence and inferences favorable to the judgment, *P & K Heating and Air Conditioning, Inc. v. Tusten Townhomes Redevelopment Corp.*, 877 S.W.2d 121, 123 (Mo. App.1994), we cannot say there was no substantial evidence supporting the trial court's judgment. *See Dave Kolb Grading*, 837 S.W.2d at 932–33. Point III is denied.

■ In their fourth point relied on, Appellants maintain the trial court erred in entering "a judgment for interest at three quarters of one percent (.75 [percent]) per month from and after October 2, 2001 ...," because there was no evidence of an agreement between Respondent and Mr. Pebworth for any interest and section 431.180, upon which the trial court relied, "did not apply in that any agreement between Respondent and [Mr. Pebworth], if any, was not a contract for private design or construction work."

Section 431.180 sets out:

1. All persons who enter into a contract for private design *or construction work* after August 28, 1995, shall make all scheduled payments pursuant to the terms of the contract.

2. Any person who has not been paid in accordance with subsection 1 of this section may bring an action in a court of competent jurisdiction against a person who has failed to pay. The court may in addition to any other award for damages, award interest at the rate of up to one and one-half percent per month from the date payment was due pursuant to the terms of the contract, and reasonable attorney fees, to the prevailing party. . . .

* * *

4. For purposes of this section, design or *construction work* shall include design, construction, alteration, repair or maintenance of any building, roadway or other structure or improvement to real property, or demolition or excavation connected therewith, and shall *include the furnishing of* surveying, architectural, engineering or landscape design, planning or management services, *labor or materials, in connection with such work.*

(Emphasis added).

Section 431.180 "places discretion in the court to award interest and attorney fees." *Vance Bros., Inc. v. Obermiller Const. Servs., Inc.,* 181 S.W.3d 562, 564 (Mo. banc 2006). "To show that the trial court abused its discretion the complaining party has the burden to show that the order is against the logic of the circumstances and is arbitrary and unreasonable." *Walton Const. Co. v. MGM Masonry, Inc.,* 199 S.W.3d 799, 808 (Mo.App. 2006).

In its "Findings of Fact & Conclusions of Law" the trial court found:

[Respondent] is entitled to interest pursuant to [s]ection 431.180 . . . That interest on the unpaid balance of $18,629.32 continues to accrue at the rate of .75 [percent] per month from and after October 10, 2001. Accrued interest as of May 18, 2007[,] is $9,386.55 and contin-

ues to accrue at the rate of $4.59 per day. While it is within the discretion of the Court to award interest up to 1.5 [percent] per month and attorney fees, it is the opinion of the Court that no award would unduly penalize [Respondent] and that an award of 1.5 [percent] per month would unduly penalize [Appellants and Mr. Pebworth]. Since the delay in this case was the fault of neither party nor their counsel the Court is awarding one half of the maximum allowed by the statute in order to neither penalize nor reward either party.

We note that in *Vance Bros.,* 181 S.W.3d at 563, the appellant, a general contractor, engaged the respondent to apply microsurfacing to a parking lot. The appellant argued that the trial court lacked jurisdiction "because the suit relied on section 431.180 and was brought as a petition on account rather than on a contract." *Id.* at 563–64. Our supreme court determined that section 432.180 did not require that the action brought under the statute be one in contract. *Id.* at 564. While the respondent supplied labor and material to a parking lot, the court noted that the respondent "brought 'an' action (a petition on account), as mandated in section 431.180, to receive payment. This satisfies the statute." *Id.*

Here, Respondent pled, and the trial court found, that Mr. Pebworth, in his capacity as general contractor, was furnished materials by Respondent for the construction of a block wall at the Condominium Complex owned by Parkview. The record reveals that Respondent, in fact, accepted a certain amount of money as an advance payment from Mr. Pebworth and then provided the blocks requested under that agreement. When payment was not forthcoming, Respondent filed its Amended Petition for Enforcement of Mechanic's Lien, setting out a "just and true account" owing from Mr.

Pebworth to Respondent in the amount of $21,972.77. Coupled with its request for a mechanic's lien, Respondent also sought "interest on the balance owed to it" after the date of demand "at the rate of one and one-half percent ... per month and for reasonable attorney's fees incurred by it in the prosecution of this action all pursuant to the provisions of [s]ection 431.180."

The trial court did not err in applying the provisions of section 431.180 in its award of interest to Respondent. *See Vance Bros.*, 181 S.W.3d at 564. Additionally, under parallel circumstances it has been held that "[t]he lien is only an incident to the right to recover for the work and materials." *Mid–West Eng'g & Constr. Co. v. Campagna*, 421 S.W.2d 229, 233 (Mo.1967) (holding that section 429.210 [7] allows for the payment of prejudgment interest). "The lack of privity notwithstanding, it would be an incomplete remedy to allow a lien for the reasonable cost of labor and materials but not interest thereon 'after the account should have been paid.'" *Dave Kolb Grading, Inc.*, 837 S.W.2d at 933 (quoting *Mid–West Eng'g & Constr. Co.*, 421 S.W.2d at 233). Accordingly, the trial court properly found that prejudgment interest was includable in the special lien imposed on the property in question. We find no abuse of discretion on the part of the trial court in its award of prejudgment interest. *See Vance Bros.*, 181 S.W.3d at 564. Point IV is denied.

Lastly, Appellants maintain the trial court erred in finding a deed of trust executed on February 26, 2001, and securing a promissory note in the amount of $2,300,000.00 from Parkview to Jefferson Financial and Union Planters ("the Deed of Trust") was a construction loan, "therefore, inferior to Respondent's mechanic's lien...." [8] Appellants assert "there is no evidentiary basis to support a finding on which to base such a judgment" because "Respondent's reference to [Mr.] Barton's testimony that someone happened to pass by [Parkview's] project and there was construction going on was not sufficient, nor does [the] [D]eed of [T]rust contain any designator of being a construction loan." We agree.

In our review, the judgment of the circuit court will be affirmed on appeal unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Butler Supply, Inc. v. Coon's Creek, Inc.*, 999 S.W.2d 748, 749 (Mo.App.1999). Subject to certain exceptions,[9] the general rule is that "[m]echanic's liens do not take precedence over a purchase money deed of trust which secures repayment of funds used to purchase land upon which the improvements giving rise to the lien claims are erected." *West-*

---

7. Section 429.210 sets out:

 [t]he court shall ascertain, by a fair trial in the usual way, the amount of the indebtedness for which the lien is prosecuted, and may render judgment therefore in any sum not exceeding the amount claimed in the demand filed with the lien, together with interest and costs, although the creditor may have unintentionally failed to enter in his account filed the full amount of credits to which the debtor may be entitled.

8. It is unclear from the record what type of interest Union Planters has in the Deed of Trust in that it is not mentioned in that document and there is nothing in the record relating to it; however, the parties concede that Union Planters has an interest in the note and Deed of Trust under review and we defer to their concession.

9. *See H.B. Deal Constr. Co. v. Labor Discount Ctr., Inc.*, 418 S.W.2d 940, 952–54 (Mo.1967); *Drilling Service Co. v. Baebler*, 484 S.W.2d 1, 10 (Mo.1972) and *Dave Kolb Grading*, 837 S.W.2d at 934–34. This is not an exhaustive list of cases in this area. *See also* Thomas B. Becker & Dana Hockensmith, Comment, *Mechanic's liens—Priority Over Mortgages and Deeds of Trust*, 42 Mo. L.Rev. 53 (1977).

*inghouse Elec. Co. v. Vann Realty Co.*, 568 S.W.2d 777, 781 (Mo. banc 1978). However, mechanic's liens do take precedence over secured loans made after the start of construction because "the lender is put on notice of existing or potential mechanics' liens, and its mortgage loan is therefore properly inferior to those liens." *Dave Kolb Grading*, 837 S.W.2d at 934; *see* § 429.050, § 429.060 and § 429.260. "Under section 429.060 and the first spade rule, mechanic's liens attach with the first delivery of material or commencement of work." *Butler Supply*, 999 S.W.2d at 750.

As best we discern, in the present matter, on February 26, 2001, a "Promissory Note" for $2,300,000.00 and "Deed of Trust and Security Agreement" was executed by Parkview in favor of Jefferson Financial and Union Planters and encumbered the Condominium Complex property. There is no reference in this ten-page, Deed of Trust that it is a construction loan. It was not until May or June of 2001 that Respondent began supplying block to the Condominium Complex project. Regarding testimony relating to whether the Deed of Trust was in fact a construction loan, Mr. Barton testified that at some unspecified time when he visited the Condominium Complex, "[t]hey were building . . . buildings there." Todd Laramore ("Mr. Laramore"), job superintendent for Parkview, testified that at the time of the construction of the block wall "Building 2 was about completed. . . ." Mr. Laramore testified he was unable to testify as to the nature of the Deed of Trust because he was "not aware of that kind of stuff, what goes on in the money end. . . ." Based on

the foregoing testimony and evidence, the trial court concluded the Deed of Trust "is a construction loan deed of trust and is, therefore, inferior to [Respondent's] mechanic's lien."

We determine there was insufficient evidence supporting the trial court's finding that the Deed of Trust was a construction loan. The only evidence offered on this issue was tangential testimony from two witnesses that there was construction of some nature occurring at the Condominium Complex during the time the block wall was being constructed. The Deed of Trust is silent on this issue and on its face gives no hint that it was a construction loan as opposed to a purchase money deed of trust or other similar instrument. The trial court's finding that the Deed of Trust was a construction loan is not supported by substantial evidence and is against the weight of the evidence. *Butler Supply*, 999 S.W.2d at 749. This point has merit. Point V is granted.

The judgment of the trial court determining that the Deed of Trust in question is a construction loan and hence inferior to Respondent's mechanic's lien is reversed and remanded for further proceedings consistent with this opinion. The trial court may take further evidence relating to this matter.[10] The judgment is affirmed in all other respects.

SCOTT, P.J., and BATES, J., concur.

---

10. " 'An appellate court should reverse a plaintiff's verdict without remand only if it is persuaded that the plaintiff could not make a submissible case on retrial. The preference is for reversal and remand.' " *Kenney v. Wal-Mart Stores, Inc.*, 100 S.W.3d 809, 818 (Mo. banc 2003) (quoting *Warren v. Paragon Tech. Group, Inc.*, 950 S.W.2d 844, 846 (Mo. banc 1997)); *see also Moss v. National Super Markets, Inc.*, 781 S.W.2d 784, 786 (Mo. banc 1989). " 'If a plaintiff, by mistake or inadvertence, fails to produce sufficient evidence at trial to prove his claim, in a situation where the proof seems to be available, the case should be remanded to permit the introduction of additional evidence.' " *Brattin Ins.*

Agency, Inc. v. Triple S. Props., Inc., 77 S.W.3d 687, 689 (Mo.App.2002) (quoting *In re Estate of Mapes*, 738 S.W.2d 853, 856 (Mo. banc 1987)). Accordingly, in this situation, we reverse and remand for additional evidence.