IN THE MATTER OF: )
LAUREN PATRICIA O'REILLY, )
 )
LAWRENCE PATRICK O'REILLY, )
 )
 Respondent, ) No. SD36874
 )
vs. )
 ) Filed: January 18, 2022
LAUREN PATRICIA O'REILLY, )
 )
 Appellant. )

 APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

 Honorable Judge Michael J. Cordonnier

AFFIRMED

 Lauren O' Reilly ("O'Reilly") appeals from a judgment appointing her father,

Lawrence O'Reilly ("Respondent") as her guardian after finding her incapacitated. In a

single point, O'Reilly claims the trial court erred by failing to replace Respondent as

emergency guardian ad litem with an "independent guardian ad litem" because it

"affirmatively appeared to the court that [Respondent] had a conflict of interest in

proceeding as the petitioner seeking to impose a guardianship upon [O'Reilly.]"
Because O'Reilly failed to present her argument to the trial court, she has failed to

preserve the point for our review. The trial court's judgment is affirmed.

 Factual and Procedural Background

 O'Reilly is 51 years old with multiple psychological disorders which resulted in

her engaging in activities that were dangerous to herself and others.1

 In December 2019, Respondent filed a "Petition for Appointment of Emergency,

Temporary, and Permanent Guardianship and Conservatorship" over O'Reilly. O'Reilly

was promptly appointed trial counsel who represented her throughout the proceedings.2

After a hearing, the trial court found O'Reilly required "the services of a guardian ad

litem for medical and other personal needs[.]" The trial court entered an order

appointing Respondent as O'Reilly's emergency guardian ad litem,3 giving him the

1 On two occasions, O'Reilly was committed for psychological evaluation and treatment on 96-hour holds.

All statutory citations are to RSMo. Cum. Supp. (2019).
2 At oral argument, O'Reilly's appellate counsel acknowledged O'Reilly's appointed counsel did "a really

good job" representing her interests at trial.
3 The trial court did not use the word "emergency" in its order but section 475.075(15) authorizes the trial

court to appoint an emergency guardian ad litem for a period not to exceed 90 days and we construe the
temporary order being an order for an emergency guardian ad litem pursuant to that section. This section
provides in pertinent part:

 If it is alleged in a petition that an alleged incapacitated or disabled respondent has no
 guardian or conservator and an emergency exists that presents a substantial risk that
 serious physical harm will occur to the respondent's person or irreparable damage will
 occur to the respondent's property because of the respondent's failure or inability to
 provide for the respondent's essential human needs or to protect the respondent's
 property, the court may, with notice to such person's attorney, as provided in subsection
 4 of this section, and service of notice upon such person as provided in subsection 2 of
 this section, and, with or without notice to other persons interested in the proceeding,
 after hearing, appoint an emergency guardian ad litem or conservator ad litem for a
 specified period not to exceed ninety days and for specified purposes. Except for good
 cause shown, the court shall hold a hearing on petitions filed under this section within
 five business days of the filing of the petition.

§ 475.075.15.

 2
powers and duties of a guardian as specified in section 475.120, for a period of 90 days

which was subsequently extended each time for 90 days, until the case went to trial.4

 A bench trial was held on the guardianship petition.5 The trial court found

O'Reilly to be incapacitated and appointed Respondent as her guardian.

 Discussion

 O'Reilly appeals in a single point:

 The trial court erred by failing to remove [Respondent] as temporary
 guardian and replace [Respondent] with an independent guardian ad
 litem, because it affirmatively appeared to the court that [Respondent] had
 a conflict of interest in proceeding as the petitioner seeking to impose a
 guardianship upon his daughter, [O'Reilly], but nevertheless the court did
 not remove [Respondent] as temporary guardian, in that [O'Reilly]
 expressly said that she did not want a guardian and did not believe that
 she needs one, but [Respondent] nevertheless litigated that issue against
 her wishes, and [O'Reilly's] attorney raised the conflict of interest multiple
 times with the court.

 While O'Reilly's point mentions the trial court's temporary order appointing

Respondent as emergency guardian ad litem, her complaint is with the final judgment.

O'Reilly argues that an emergency guardian ad litem could not be allowed to proceed on

the action to have her declared incapacitated because it was a conflict of interest not to

follow the wishes of the ward. O'Reilly argues the trial court erred in failing to remove

Respondent due to this "conflict of interest."

 However, O'Reilly never presented a claim to the trial court requesting that

Respondent be removed as the emergency guardian ad litem. To preserve an issue for

appeal, it must be presented to the trial court. Vance Bros., Inc. v. Obermiller

Const. Servs. Inc., 181 S.W.3d 562, 564 (Mo. banc 2006); see also Rule 78.07. We

4 This section provides, in relevant part: "[a] guardian or limited guardian of an incapacitated person
shall act in the best interest of the ward."
5 Respondent dismissed his petition for a permanent conservatorship prior to trial.

 3
will not consider an allegation of error in a civil appeal unless the trial court was given

an opportunity to rule on the question. In Interest of B.L.L.S., 557 S.W.3d 486, 492

(Mo. App. S.D. 2018); Mayes v. Saint Luke's Hosp. of Kansas City, 430 S.W.3d

260, 267 (Mo. banc 2014). "To give the court an opportunity to rule on the issue, a party

must make a timely objection or request, which is one 'made when the occasion for

the ruling desired first appears.'" Mayes, 430 S.W.3d at 267 (quoting Brown v.

Thomas, 316 S.W.2d 234, 237 (Mo. App. Spfld.D. 1958).

 O'Reilly claims she raised this issue repeatedly throughout the proceedings and

again in her post-judgment motions. O'Reilly acknowledges, however, she did not file a

motion or make a request of any kind, oral or written, seeking Respondent's removal

based on a conflict of interest.6 If O'Reilly truly believed a conflict of interest existed

and she was being deprived of her constitutional due process as a result, the time to

alert the trial court of her concerns was before trial, giving the trial court an opportunity

to rule intelligently on the issue and correct the alleged error. By failing to raise the

removal of the emergency guardian ad litem issue with the trial court, O'Reilly has failed

to preserve that claim for our review.7

6 Although O'Reilly's attorney raised her clients' dissatisfaction with the guardian ad litem to the court

many times regarding her treatment placements and treatment, her guardian ad litem's access to her
treatment records, her lack of use of her cell phone, and her preference for the appointment of the county
public administrator as guardian, O'Reilly never requested Respondent's removal based on a conflict of
interest. Rather, her objections were that certain evidence should be excluded on an alleged breach of
fiduciary duty theory.
7 We note, however, O'Reilly's understanding of what constitutes a conflict of interest between a guardian

ad litem and ward is patently wrong. The role of a guardian ad litem is not to advocate for what a ward
wants but to make a recommendation to the court as to what is in the ward's best interest. 53 Am. Jur. 2d
Mentally Impaired Persons § 176, n1. In fact, "[t]he guardian ad litem concept implies the guardian
substitutes his judgment for that of the [ward] and proceeds almost independently of the [ward's] will."
John A. Borron, Jr., § 1944. Hearing rights of alleged incapacitated person—Generally, 5C Mo. Prac.,
Probate Law & Practice § 1944 (3d ed.). Rather than advocate for the wishes of the ward, a guardian ad
litem is required to act in the ward's best interest. State ex rel. Schwarz v. Ryan, 754 S.W.2d 949,
951 (Mo. App. E.D. 1988). And what is in a ward's best interest may sometimes conflict with a ward's
wishes. See Matter of Mitchell, 914 S.W.2d 844, 851 (Mo. App. S.D. 1996).

 4
 Perhaps anticipating this result, O'Reilly requests we consider plain error review.

While we generally do not review errors not preserved for appeal, Rule 84.13(c) gives us

the discretion to review unpreserved errors affecting substantial rights when the Court

finds that a manifest injustice or a miscarriage of justice has resulted therefrom.

Davolt v. Highland, 119 S.W.3d 118, 135 (Mo. App. W.D. 2003). We rarely grant

plain error review in civil cases and apply the rule sparingly. Id. This is not a case that

warrants plain error review.

 Decision

 The trial court's judgment is affirmed.

MARY W. SHEFFIELD, P.J. – OPINION AUTHOR

GARY W. LYNCH, C.J. – CONCURS

STEVEN A. PRIVETTE, SPECIAL JUDGE – CONCURS

 5